IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN LANCE, on behalf of self          )
and all others similarly situated        )
                                         )
            Plaintiff,                   ) Case No. 04-5270
                                         )
vs.                                      ) Magistrate Judge
                                         )  Arlander Keys
THE SCOTTS COMPANY, d/b/a                )
SCOTTS LAWN SERVICE, INC.,               )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Lance filed suit against his employer,
Defendant Scotts Lawn Service, Inc. ("Scotts"), claiming that
Scotts' method of calculating his pay --particularly his overtime
pay - violated the Fair Labor Standards Act ("FLSA") and the
Illinois Minimum Wage Law.  Currently before the Court are
Defendant's Motion for Summary Judgment; and Plaintiff's 216(B)
Motion to Certify a Representative Action and to Approve Notice.
For the reasons set forth below,  Defendant's Motion for Summary
Judgment is Granted, and Plaintiff's Motion to Certify is Denied.

### Background Facts

Plaintiff began working for Scotts as a Territory Service
Representative ("TRS") in January 2002, at Scott's Bensenville
and Woodridge locations.  Scotts' TSRs provide lawn services to
customers within a specified territory.  In most parts of the
country, lawn service work is seasonal.  As a result, TSRs tend

to be extremely busy during warmer months, but have fewer demands on their time in the winter. Plaintiff testified, however, that he rarely worked fewer than 40 hours per week.

Despite the fluctuation in hours, TSRs are paid the same base salary throughout the year. Under the fluctuating workweek method ("FWW"), which is endorsed by the United States Department of Labor ("DOL"), Scotts' TSRs receive a set salary covering straight-time pay for all ours worked in a week – that is, regardless of whether the employee has worked more or less than 40 hours. In addition to their salary, employees are eligible to receive both commissions and overtime, which is computed at one-half the employee's regular rate. In theory, the FWW method is beneficial to both employers and employees, because it provides a measure of financial predictability and uniformity.

Scotts typically informs its TSR's about its pay method during new hire orientation. Scotts' local managers have the discretion to explain the method in a manner that they believe most effectively conveys the FWW method of pay. Branch Manager Rich Kenney explained Scotts' pay method to Plaintiff during his initial interview. Plaintiff admitted that Rich Kenney explained that he would be paid a base salary that would remain the same, regardless of how many hours he worked, and that Plaintiff was also eligible to receive commissions and overtime. Rich Kinney also went over the formula for calculating commissions and

2

overtime with Plaintiff on a number of occasions

In addition to his initial interview, Plaintiff concedes that Mr. Kinney went through the pay method at each of his annual reviews, during some of the weekly Monday meetings, and on a few occasions when Plaintiff had specific questions about his pay. Pl's Dep. at pp. 32-35. Even though the numbers in Mr. Kinney's examples always "worked out," Plaintiff remained confused about the manner in which his pay - particularly his overtime - was calculated. See Pl.'s Dep. at p. 35.; at pp.59-60.

Scotts also left handouts describing the method for calculating commissions and overtime in a community area at the Woodridge location. Pl.'s Dep. at p. 38. Plaintiff testified that these handouts helped him understand the pay method. Id.

Plaintiff acknowledged that he always understood that his pay consisted of three separate components - base salary, commissions, and overtime. Plaintiff also acknowledged that he understood that his hours would fluctuate from week to week, but that his base salary would, nevertheless, remain the same. However, Plaintiff denied that, prior to May of 2004, he was ever told or ever understood that he was being paid overtime at a rate of one half of his regular rate of pay.

3

## **Procedural History**

Plaintiff filed a two count Complaint against Defendant on August 11, 2004.  Count 1 alleged that Defendant violated the Fair Labor Standards Act by failing to pay overtime at a rate of not less than one and one-half times the regular rate for hours in excess of 40 hours per week, from November 17, 2000 to the present.  29 U.S.C.A. § 216(b) (West 2005).  Count II alleges that Defendant's conduct also violates the Illinois Minimum Wage Law.  820 ILCS 105 et al.  On January 19, 2005, Plaintiff filed a 216(b) Motion to Certify a Representative Action and to Approve Notice with respect to Count I. 29 U.S.C. § 216(b) (West 2005).

Defendant also filed a Motion on January 19, 2005[1], seeking a grant of summary judgment on Plaintiff's claims.  Defendant argues, both in its Motion for Summary Judgment and in its Opposition to Plaintiff's Motion for Certification, that Plaintiff's FLSA claim lacks the requisite evidentiary support to continue on its own or as a collective action.  In support of its argument, Defendant submitted declarations from Scotts' managers and TSRs working at branch locations across the country.  Because some of these declarations were not included in Defendant's earlier disclosures, Defendant supplemented its initial disclosures, pursuant to Rule 26(a)(1).  Fed. R. Civ. P.

---

[1]  On April 1, 2005, the Court granted Defendants' oral motion for leave to renew its Summary Judgment Motion, which was subsequently filed on April 14, 2005.

4

26(a)(1).

Plaintiff responded by filing a Motion to Strike the declarations. The Court denied the Motion in open court. Currently before the Court are Plaintiff's Motion to Certify and Defendant's Motion for Summary Judgment. Because the Court concludes that Defendant's Summary Judgment Motion should be granted, Plaintiff's Motion to Certify necessarily fails.

## **Standards**

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). The Court does not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

5

However, in determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party initially bears the burden of showing that the record contains no genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party need not negate its opponent's claim. *Id.* at 322. Instead, with respect to issues on which the non-moving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'-- that is, pointing out to the district court-- that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

If the moving party meets its burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial; the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading . . . ." *Anderson,* 477 U.S. at 248, 257. Additionally, "mere conclusory" allegations are inadequate. *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.,* 475 U.S. 574, 596 (1986). The non-moving party will not survive summary judgment if it cannot present

6

sufficient evidence to support each element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs with citations to admissible evidence. Loc. R. 56.1(a); *Smith v. Lamz,* 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The Seventh Circuit has repeatedly held that a district court is entitled to expect firm compliance with Rule 56.1. *Bordelon v. Chi. Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment"). If the party opposing summary judgment fails to submit a 56.1(b) statement and point to supporting material in the record, the moving party's statements will be deemed admitted as long as they are supported in the record. Loc. R. 56.1(b)(3)(B); *Garrison v. Burke,* 165 F.3d 565, 567 (7th Cir. 1999).

7

## Discussion

### I.  Summary Judgment Is Appropriate

The Fair Labor Standards Act and the Illinois Minimum Wage Law[2] both permit employers to pay non-exempt employees pursuant to the FWW method.  29 C.F.R. § 778.114(a); Ill. Admin. Code. 56 § 210.430(f).  Under the FWW method, employees whose hours fluctuate from week to week receive a fixed salary for all straight-time hours worked, regardless of the actual number of hours worked.  *See Condo v. Sysco Corp.,* 1 F.3d 599, 602 (7th Cir. 1993) (noting that it is irrelevant that an employee ever work less than forty hours in a given week, the law simply requires that the employee's hours fluctuate).  During those weeks that the employee works over forty hours, the employee receives an overtime premium calculated on a half-time basis, as opposed to the traditional "time and a half" typically used to compensate for overtime.

The FWW overtime premium is calculated as follows: the fixed weekly salary is divided by the number of hours the employee actually works in a particular week to yield the employee's regular rate of pay.  *Id.* at 601-602.  The employee is paid

---

[2]  The relevant provisions of the FLSA and the Illinois Minimum Wage Law "are coextensive" and, therefore, if Defendant's method of computing pay satisfies the FLSA, it also satisfies the Illinois Minimum Wage Law.  *Condo,* 1 F.3d at 601 n.3.  Therefore, the Court will refer only to the FLSA in its analysis – just as the parties do.

overtime at one-half the regular rate of pay.

Employers may only utilize the FWW method if five criteria are met: 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours worked per week; 3) the fixed salary must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employee must receive at least 50 percent of his regular hourly pay for all overtime hours worked; and 5) the employer and the employee must have a clear mutual understanding that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek. *Id.*; 29 C.F.R. § 778.114(a),(c).

Plaintiff does not dispute that Defendant has satisfied the first, third and fourth criteria, arguing only that Defendant cannot carry its burden with respect to the second and fifth criteria. Therefore, summary judgment is proper only if Defendant demonstrates that there is no genuine issue of material fact that 1) TSRs, including Plaintiff, received a fixed salary that remained constant regardless of the number of hours work and 2) that Defendant and Plaintiff have a clear mutual understanding that TSRs are paid under the FWW method.

## A.   Plaintiff Received a Fixed Salary

Plaintiff claims that he did not receive a fixed salary

9

within the meaning of Regulation 114 for two distinct reasons.
First, Plaintiff claims that the evidence shows that his base pay
fluctuated.   Second, Plaintiff claims that the proper formula for
determining the regular rate of compensation from which the
overtime compensation is derived is based on a percentage of
productivity that impermissibly varies from week to week.   The
Court will address each argument in turn, noting that Plaintiff
bears the burden of proving an improper application of the FWW
method.  *See Monahan v. County of Chesterfield, Va.,* 95 F.3d
1263, 1281 (4th Cir. 1996) (placing the burden of proof on the
employer as to the clear understanding element only.)

## 1.   The Evidence Does Not Show that Plaintiff's Salary Impermissibly Fluctuated.

In support of his argument that the evidence shows that his
base pay fluctuates, Plaintiff points to three pieces of
evidence: 1) Plaintiff's deposition testimony that there were
occasions when his total compensation was less than his base
salary; 2) Human Resources Director Kevin Talley's admission that
there have been impermissible deductions taken to lower a TSR's
base pay and occasions when TSR's were paid for less than 40
hours in a week; and 3) Branch Manager Rich Kinney's testimony
that base pay fluctuates from week to week.

A full and fair reading of Plaintiff's deposition testimony
does not support his argument that his base salary impermissibly
fluctuated.  Plaintiff testified that there were times when his

10

base salary dipped below $10 per hour.  Pl.'s Dep. at pp. 48-51.
But the FWW method specifically contemplates that the hourly rate
- as opposed to the base salary -- will fluctuate each week,
depending upon the actual number of hours worked.  *Overnight
Motor Trans. Co. v. Missel*, 316 U.S. 572, 580 (1942) ("It is true
that the longer the hours the less the rate and the pay per
hour.")  While Plaintiff's base salary - $800[3] biweekly -
remained constant, his hourly rate would change in accordance
with the actual hours worked. *See Samson v. Apollo Resources,
Inc.*, 242 F.3d 629. 634 (5th Cir. 2001).

     For example, if Plaintiff worked 40 hours per week for two
consecutive weeks, Plaintiff would have earned $10 per hour.
Assuming that Plaintiff did not earn any commissions that week,
Plaintiff's total pay would be his $800 salary for those two
weeks, and nothing more.  However, if Plaintiff worked 50 hours
per week for two consecutive weeks, Plaintiff would still receive
his $800 salary, but he would be paid at a rate of only $8.00 per
hour ($800 divided by 100 hours = $8.00/hour).  Again, assuming
that Plaintiff did not earn any commissions for those two 50-hour
weeks, Plaintiff would still earn his $800 salary, but he would
also be paid $160 in overtime pay (20 hours of overtime
multiplied by the $8.00 hourly rate), for a total of $960.  While

---

     [3]  Both parties indicate that Plaintiff received raises over
the course of his employment.  Of course neither party suggests
that this type of fluctuation in any way violated the FLSA.

Plaintiff's hourly rate may have fluctuated (from $10/hour to $8/hour), his base salary ($800 every two weeks) remained constant.

At one fairly confusing point in his deposition, Plaintiff seemed to indicate that his base biweekly salary did, in fact, drop below $800. *See* Pl.'s Dep. at p. 49.  Plaintiff was explaining that, during those weeks that he worked over 40 hours, but didn't earn any commissions, his hourly rate would plummet - "it would go down to $9.50 at times[4]." *Id.* at p.48.   As explained above, this is perfectly permissible under the FLSA and the relevant regulations.  Moments later, however, counsel asked Plaintiff "So if your base rate was $400 for the first 40 hours, you had weeks where you earned less than $400?"  Plaintiff responded "Right, for the same amount of hours"  and then stated "I would be wondering why my base salary would drop lower than the $10 that it was."  While it appears that Plaintiff was confused - did he mean that he wasn't paid at least $400 each week, or was he simply reiterating his earlier testimony that his hourly rate fluctuated?  - , taken in a light most favorable to Plaintiff, this testimony, standing alone, would tend to support Plaintiff's claim.  If Plaintiff were paid less than $800

---

[4] As explained above, however, this confusion was apparently based upon Plaintiff's mistaken notion that his base salary was $10.00 per hour, and not the $800 biweekly salary. Once again, this fluctuation is entirely permissible.

biweekly, his guaranteed base salary, this would be evidence that Defendant may not have been conforming to the FWW method.

The confusion is cleared up later in his deposition, however. When defense counsel asked Plaintiff whether he can recall any instances when his total pay was less than his $400 weekly salary, Plaintiff responded: "That I don't know because I never really done [sic] the math, man. I didn't do the math . . I don't know . . It's possible. I have no idea."  Pl.'s Dep. at p. 165. This testimony clarifies Plaintiff's prior, confusing testimony, and permits only one inference - that Plaintiff has no evidence that he ever received less than his base salary of $800 biweekly.

Mr. Talley's testimony does not support Plaintiff's position either. Early in his deposition, Mr. Talley admits that, at some point in time, Scotts' rules on the administration of fixed salaries for the FWW provided that deductions from base salary were sometimes permissible: "Deductions may be made when associate absents himself from work for a day or more for personal reasons, other than sickness or and [sic] accident." Talley Dep. at p. 142. Later, Mr. Talley conceded that there may have been isolated instances when a Scotts' manager failed to give an employee his full base pay, but he could not recall any specific incidents of that occurring. Talley Dep. at p. 194.

13

Plaintiff has not directed the Court to any evidence that the policy was ever applied to him, or even that the policy was in place during Plaintiff's tenure with Scotts. In addition, FWW regulations "in no way bars 'occasional' deductions from salary for 'wilful absences or tardiness,' so long as the full salary figures in the calculation of the regular rate and the amount of salary remaining after such reductions supports an average hourly rate at least equal to the applicable minimum wage." *Cash v. Conn Appliances, Inc.,* 2 F. Supp.2d 884, 895 and 906 n. 52. (E.D. Tex. 1997).

Because Plaintiff has failed to come forward with any evidence that the policy has been applied in the past two years, 29 U.S.C. § 255 (West 2005) (establishing a two-year statute of limitations for FLSA violations); that it has ever been applied to him; or that the application of the policy ever resulted in anything more than permissible, occasional deductions, Mr. Talley's deposition testimony does not support Plaintiff's claim that Defendant was not entitled to use the FWW method.

Finally, Plaintiff misrepresents Mr. Kinney's testimony in an attempt to buttress his case. Plaintiff claims that Mr. Kinney admitted that the TSRs' base salary fluctuated from week to week. A full reading of Mr. Kinney's testimony, however, indicates that Mr. Kinney was referring not to the TSRs' guaranteed base salary, but rather to the base hourly rate for

14

determining the overtime component of the TSRs' pay. *See* Kinney

Dep. at p. 30.    Specifically, Mr. Kinney was explaining that the

hourly rate for calculating overtime pay consisted of adding both

the TSRs' base salary plus any earned commissions, and then

dividing that sum by the number of hours worked.    Because the

earned commissions fluctuated from week to week, the base hourly

rate for determining overtime pay necessarily fluctuated as well.

This is permissible under the relevant DOL regulations.    *See* 29

C.F.R. §§ 778.117-778.118.

The Court concludes that, even when viewing the evidence in

a light most favorable to Plaintiff, there is no genuine issue of

material fact that Plaintiff's base salary did not impermissibly

fluctuate.

## 2. The formula for determining Overtime Compensation Does Not Impermissibly Fluctuate.

Plaintiff next argues that Defendant cannot rely upon the

FWW method, because it impermissibly adds the TSRs' commissions

to the TSRs' salary to determine the hourly rate for overtime

pay.    To the contrary, Defendant's method of calculating overtime

pay is specifically contemplated and authorized by the DOL[5]. FLSA

regulations provide that:

---

[5]  Plaintiff's citation to *Dole v. Trusty*, 707 F. Supp. 1074
(W.D. Ark. 1989) is unavailing, as the case is entirely
inapposite .    *Trusty* analyzed different provisions of the FLSA
regulations, which dealt with pseudo-bonuses.    *Id.* at 1077
(citing 29 C.F.R. §§ 778.502, 778.502(e).)

15

> When commission is paid on a weekly basis it is added to the
> employee's other earnings for that workweek . . and the
> total is divided by the number of hours worked in the
> workweek to obtain the employee's regular hourly rate.   The
> employee must then be paid extra compensation at one-half of
> that rate for each hour worked in excess of the applicable
> maximum standard.

29 C.F.R. § 778.118.  This is precisely what Defendant does to

arrive at the regular hourly rate for determining overtime pay.

Defendant's formula is consistent with the FLSA and its

regulations.  Plaintiff's argument is rejected, and the Court

concludes that there is no genuine issue of fact that Defendant

satisfies the second criteria for utilizing the FWW method.

## B. The Clear Mutual Understanding Requirement is Satisfied

Plaintiff contends that Defendant cannot meet its burden of

demonstrating that the parties had a clear mutual understanding

that Plaintiff was being paid according to the FWW method.

Regulation 778.114 explains the requirements for utilizing the

FWW method of pay.  29 CFR 778.114 (a).  This section provides

that an employer may utilize the FWW method of pay "[w]here there

is a clear mutual understanding of the parties that the fixed

salary is compensation (apart from overtime premiums) for the

hours worked each workweek, whatever their number, rather than

for working 40 hours or some other fixed weekly work period" *Id.*

Plaintiff argues that the clear mutual understanding element is

missing in this case, because he does not understand how his

pay--particularly his overtime--is calculated and because he did

16

not understand, prior to May 2004, that he would be paid only one-half his hourly rate as an overtime premium.

Clearly, the record is replete with evidence that supports Plaintiff's contention that he did not understand how his pay was calculated[6]. At his deposition, Plaintiff stated repeatedly that, while he understood that his hours would fluctuate and that his pay consisted of his base salary, commission and overtime, he never understood how the formula for calculating his pay worked. But the law requires no such understanding. *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) ("Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated."); *see also Valerio v. Putnam Assocs., Inc..*, 173 F.3d 35, 40 (1st Cir. 1999) (confirming the narrow reading of clear mutual understanding, and noting that the FLSA does not require that employees understand how their overtime is calculated).

Plaintiff makes much of the fact that the formula contained in his employee training manual and in the Scotts' formula worksheets left for his use in the office suggested that he would be receiving time and a half for his overtime hours.  But the

---

[6]   Plaintiff repeatedly states that he "would need to be a mathematician to be trying to figure out what base/this/equals" Pl's Dep at p.23; and that "they can show you all day long. Don't mean nothing to me, to be honest with you."  *Id.* at p. 149.

formula that Scotts utilized in its paperwork is directly patterned on the example formula provided in the relevant regulation[7] and is similar to the formula used in an example by the Seventh Circuit Court of Appeals in *Heder v. city of Two Rivers*[8], 295 F.3d 777 (7th Cir. 2002) (noting that the clear mutual understanding element is satisfied if the employee and employer know that the base salary constitutes straight time for overtime hours).

Plaintiff also notes that, while Scotts relies heavily upon a May 2004 memo to satisfy its clear mutual understanding burden, Scotts cannot point to equally persuasive and thorough documentation issued prior to that time. The May 2004 memo,

---

[7]   29 C.F.R. 778.114(b)notes that an employee who receives a salary of $250 per week and works 44 hours in his second week is paid as follows: the employee's regular hourly rate is $5.69 ($250 divided by 44 hours); "for the second week [the employee is entitled to] $261.36 ($250 plus 4 hours at $ 2.84, or 40 hours at $5.68, plus 4 hours at $8.52)" Scotts' examples were patterned after the second example in 29 CFR 778.114(b).

[8]   The *Heder* court stated:

Consider an employee paid $400 per week for however many hours worked . . . . In the 30 hour week, the $400 salary produces a straight time compensation of $13.33 per hour ($400/30) all of which the employee keeps. In the 50 hour week, the straight time rate is $8 per hour ($400/50); 10 of these 50 hours are overtime, but because the base rate includes $8 for each of these hours, the incremental pay for overtime is only $4 per hour more, and the total wages for the week are $440. This includes time an a half for the 10 overtime hours, giving the employer credit for the $8 base rate spread over 50 hours.

18

which Plaintiff acknowledged receiving and understanding[9],
informs TSRs that:

> As you know, the hours you work may fluctuate from week to
> week due to business or weather conditions or other factors.
> But regardless of the number of hours that you work in a
> week, you receive a fixed base salary for that week. **Your
> weekly base salary is your straight time pay for whatever
> hours you work during the week**. In other words, you receive
> a fixed base salary regardless of whether you work 40 hours
> or more or less than 40 hours in a week.

Pl.'s Dep. Ex. 18 "Compensation Policy for Territory Service
Representatives and Sales Representatives." (emphasis in the
original.)  This document clearly sets forth the required
elements under the FLSA and accompanying regulations.  While
Scotts' previous handouts describing its Compensation Policy
include examples of how pay is calculated, none of the previous
handouts include the defining statement from the May 2004 memo,
highlighted above.

But any gap in documentary evidence is successfully
supplemented by Plaintiff's own testimony.  At his deposition,
Plaintiff acknowledged that he had always known that the hours he
worked each week would fluctuate.  *See, e.g.* Pl.'s Dep at 139.
In addition, Plaintiff admitted that Scotts explained to him that
he would be receiving a base salary and that his paycheck would
never drop below his base salary, regardless of how many hours he

---

[9]  Plaintiff claims that he only signed the memo because
everyone else was signing it and it was expected that he should
sign it.

worked.  *Id.* at pp. 23-24.  Finally, Plaintiff repeatedly states that Scotts worked through the compensation formula with him on numerous occasions[10]; that the numbers always "worked out" when Mr. Kinney showed him how to apply the formula, but that he simply could not understand how the formula worked.  However, "the regulation does not require an employer to make all employees personnel specialists.  'Further, we do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her' precisely how the payroll system works.'"  *Griffin v. Wake County*, 142 F.3d 712, 717 (4th Cir. 1998) (quoting *Monahan v. County of Chesterfield*, 95 f.3d 1263, 1275 (4th cir. 1996)).

In the instant case, the Court finds that Scotts repeatedly provided its employees, including Plaintiff, with clear and accurate descriptions of their compensation. *Id.*   Plaintiff understood the critical aspects of the FWW, and his confusion over the calculation of overtime does not defeat Scotts' right to rely upon the FWW method of paying its employees.

## II. Plaintiff's Motion for Certification and Notice is Denied.

Having determined that Plaintiff cannot survive summary

---

[10]  Scotts explained the formula to Plaintiff during his initial interview with Mr. Kinney, during his annual reviews, during Monday morning meetings, and on a few separate occasions when Plaintiff approached Mr. Kinney with questions about his pay.  In addition, Plaintiff admitted that he frequently consulted the compensation handouts that Scotts had stacked in the office, and that the handouts helped him understand his pay.

Judgment, the Court readily concludes that Plaintiff's Motion For
Certification and Notice must be denied. Although the authority
is fairly sparse, those courts that have addressed the issue have
ruled that an FLSA plaintiff that cannot withstand summary
judgment "may not assert a claim under the FLSA for 'similarly
situated' employees." *Jastremski v. Safeco Ins. Cos.,* 243 F.
Supp. 2d 743, 745 n.1 (N.D. Ohio 2003); see also *Graffy v. Jewel
Foods Stores*, No. 83 C 9313, 1985 WL 3352, at *2 (N.D. Ill. Oct.
29, 1985).

In addition, Plaintiff has failed to come forward with
evidence - other than his own hearsay testimony- that other
employees shared his concerns. "A showing 'that there are other
employees of the employer who desire to 'opt in' also must be
made before a case can proceed as a FLSA collective action."
*Cash v. Conn Appliances, Inc.,* 2 F. Supp.2d 884, 897 (E.D.Tex.
1997) (quoting *Dybach v. State of Fla. Dep't of Corrections,* 942
F.2d 1562, 1567-68 (11th Cir. 1991)). Plaintiff has not
submitted declarations from like-minded coworkers, nor offered
supporting deposition testimony from other Scotts' TSRs. *See
Levinson v. Primedia Inc.,* No.02 Civ. 222 (CBM), 2003 WL
22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (before notice will be
ordered, the plaintiffs must make a "factual showing that extends
beyond their own circumstances.")

Even absent these roadblocks, Plaintiff has failed to come

21

forward with evidence that he could satisfy the commonality requirement for certification.   Defendant has produced declarations from several of its TSRs indicating that they, unlike Plaintiff, clearly understood Scott's pay method.  *See, e.g.,* Parson's Decl.  Moreover, the unrefuted evidence shows that Scotts disseminates its pay method in a decentralized manner, leaving each of the branch managers with wide discretion to convey the relevant information. *See* Hamilton Decl.   Plaintiff and his fellow TSRs are not sufficiently similarly situated simply because they received the same pay, pursuant to the same, lawful pay method.  *See Pfaahler v. Consultant for Architects, Inc.,* No. 99 C 6700, 2000 WL 198888, at *2-3 (N.D. Ill. Feb. 8, 2000) (certification and notice denied where individualized, fact-specific inquiry would be required.)

### Conclusion

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Motion for Certification and Notice.

Date: July 21, 2005

E N T E R E D:

ARLANDER KEYS
United States Magistrate Judge

22